Tucker, P.
I am far from thinking that the injunction in this case was improvidently awarded by a judge of this court. The property of the feme covert settled upon her by her father’s will had been decreed to be sold to satisfy her husband’s debts, in a cause to which she was not a party, her trustees alone being the defendants. In the estimate of a court of equity, they were unsubstantial shadows. That court could not pronounce *10 upon the rights of the parties really interested, without having them before it. At law, indeed, the trustee is the proper party defendant; but in equity no decree can be rendered affecting the rights of the cestui que trust, unless he is a party; for it is a fundamental principle of the court that all parties, however remotely concerned in interest, must be before it, or no decree can be made to bind them. Mitf. Plead. 144. 3 Munf. 376. And 2 Madd. Ch. Pract. 142. This is particularly the case as to cestuis que trust, since the trustee is a mere nominal party, and the real beneficial interest is in the cestuis quetrust. 2 Johns. Ch. Rep. 238. 1 Ball & Beatty 181. 184. The exceptions to the rule it is unnecessary to state, as they would have no application here. I think the injunction was properly awarded, and that the only question in the cause is upon the merits.
As to the merits, I am satisfied that the weight of the evidence is decidedly against the allegation that any of the slaves were given to mrs. Collins. I have in other cases declared that I deemed it necessary, in order to sustain an alleged parol gift by a father to his daughter on her marriage, that the evidence of such gift should be clear and cogent; and in that opinion I understood my brethren to concur. Brown v. Handley, 7 Leigh 119. Mahon v. Johnson, 7 Leigh 317. In this case, to say the least, the testimony is very meagre. I think it altogether insufficient.
Then, as to the alleged loan : It will be unnecessary to say any thing upon the legal question spoken to in'the cause. It has been long settled in this court, that according to the true construction of the loan act, a resumption of possession by the lender, or recording a deed or wfill granting away the property to another, within the five years, avoids the operation of the act and puts an end to the loan. Beasley v. Owen, 3 Hen. & Munf. 449. The evidence of a loan in this case is itself equivocal. Hughes, having married his daughter *11 to Collins, puts him upon one of his plantations to manage it for him, and sends with him various slaves, some to work in the field, and Dicey as a house servant. She was therefore still as much in his service as any of the rest, and the evidence clearly proves that they were not loaned. On the whole of them, including Dicey, he always paid the taxes, and listed them with the commissioner of the revenue in his own name. What more can the owner of slaves do, who places them in the hands of a manager to do service on his estate ? How can a creditor complain of being deceived, who advances goods to my manager, not for my use, upon the credit of property held by him upon my own estate, worked by my own slaves, which slaves are listed in my name on the commissioner’s books, and the taxes on them paid'by me ? If he uses ordinary diligence, or if he does not wink hard that he may not see, he must learn that he should not give the credit. In this case, if he had gone to the farm, he would have found it was Hughes's: if he had applied to Collins, he would have learned that the property was not his; and if (as was most natural) he had gone to the commissioner’s books, which furnish a record of the property of individuals, he would have there seen that Hughes claimed to be the owner of the slaves, and paid taxes on them as such. In no other way can the owner of property under the management of another, better manifest his own rights, and negative a pretension on the part of creditors to charge his estate with the debts of that other. Therefore, even if there was no further proof, I should be opinion to reverse the decree. But it is proved that in four years after the marriage, Hughes himself went and lived on the place which Collins lived on, and continued to live there till his death. It was managed for him by Collins, and he received the crops, allowing Collins part of them for his services. He lived in the house where Dicey was house servant, and even if she had *12 not before that time been in his possession, y,et from tjiai time she must be construed to have been so. The possession must be construed to be with the property, unless the contrary be actually proved; and that has not been done here, as Dicey was a menial in a household where a father and his daughter and son in law appear to have resided together, all having the services of the slave; the father having (as one of the witnesses testifies) “ gone to live with them that the daughter might be better provided for.”
Upon the whole, I am of opinion that this is one of the numerous instances afforded by our courts, of an attempt to make one man pay another’s debts.
I am of opinion to reverse the decree, reinstate the injunction, and send the cause back'for further proceedings.
The other judges concurring, decree reversed, injunction reinstated, and cause remanded for further proceedings.